The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Jevon Ray DAVIS, Defendant–Appellant.

No. 06CA1760.

Colorado Court of Appeals,
Div. I.

June 23, 2011.

**52**

John W. Suthers, Attorney General, Joseph G. Michaels, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Pamela A. Dayton, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TERRY.

In this appeal of a conviction for sexual assault, we consider the effect of a prosecutor's closing argument, unsupported by expert or lay testimony, about the "stages" typically experienced by trauma victims, where such argument was used to bolster the victim's credibility. We conclude this argument constitutes reversible error.

Defendant, Jevon Ray Davis, appeals the judgment of conviction entered upon a jury verdict finding him guilty of sexual assault. He also appeals his sentence. We reverse and remand for a new trial.

## I. Background

Viewed in the light most favorable to the prosecution, the evidence admitted at trial showed the following. Defendant met W.B. in 2003. They engaged in consensual sex on multiple occasions. On April 14, 2005, defendant asked W.B. to come to his apartment at around 3:00 a.m. When W.B. arrived at de-fendant's apartment, he sexually assaulted her.

Defendant was convicted of two counts of sexual assault.

## II. Prosecutorial Misconduct

Defendant contends that his conviction must be reversed because of prosecutorial misconduct in closing argument. We agree.

### A. Legal Standards

A prosecutor has a duty to refrain from using improper methods to produce a conviction. "Prosecutors have a higher ethical responsibility than other lawyers because of their dual role as both the sovereign's representative in the courtroom and as advocates for justice." *Domingo–Gomez v. People,* 125 P.3d 1043, 1049 (Colo.2005). A prosecutor's argument is likely to have significant influence on the jury because a prosecutor represents the State and the People of Colorado. *Id.* "For that reason, the possibility that the jury will give greater weight to the prosecutor's arguments because of the prestige associated with the office and the presumed fact-finding capabilities available to the office is a matter of special concern." *Id.* As a result, the prosecutor must avoid comments that could mislead or prejudice the jury. *Id.* "Final argument may properly include the facts in evidence and any reasonable inferences drawn therefrom," *Id.* at 1048.

An appellate court reviewing a prosecutorial misconduct claim conducts a two-step analysis. *Wend v. People,* 235 P.3d 1089, 1096 (Colo.2010). It must determine (1) whether the prosecutor's questionable conduct was improper based on the totality of the circumstances, and (2) whether such actions warrant reversal according to the proper standard of review. *Id.*

Defendant objected to the prosecutor's closing argument on the same grounds now raised on appeal, and thus preserved this assertion of error for harmless error review. For the reasons set forth in *Crider v. People,* 186 P.3d 39, 42–43 (Colo.2008), however, we reject defendant's contention that we must review the alleged prosecutorial

misconduct here for constitutional harmless error, and we instead review it for nonconstitutional harmless error. *See id.* at 42 (prosecutor's exceeding the bounds of permissible closing argument by threatening to mislead a jury with expressions of personal opinion or inflammatory comments is broadly accepted as being subject to the discretion of the trial court, and does not rise to the level of constitutional error). Trial error will be disregarded as harmless when there is no reasonable probability that the error contributed to the defendant's conviction. *Id.*

### B. The Prosecutor's Comments Were Improper

■ With these standards in mind, we consider the prosecutor's comments during closing argument regarding the "stages" experienced by trauma victims.

No expert or lay testimony was admitted regarding trauma victims' experiences or any "stages" they endure. Despite the lack of any such testimony, however, the prosecutor made argument and gave a slide presentation on these issues, while attempting to portray them as matters the jury would know from common sense or common experience.

The prosecutor stated:

Our reason, our common sense, and our experiences in life lead us to know that traumas have certain stages in coping with them. [T]here's [an] initial stage.... What do we expect to see? We expect to see shock, disbelief, confusion. Now let's assess [W.B.'s] reaction to what occurred to her on April 14th, 2005.

After comparing W.B.'s reaction to the symptoms of the "initial stage," the prosecutor said that her initial reaction was "exactly what we'd expect from a trauma victim, someone who has been sexually assaulted."

The prosecutor continued by explaining the "secondary stage":

[A victim has an opportunity] to do some reflection, but [she has not] had a lengthy period of time, [she has not] been left alone, [she has not] had an opportunity to be in [her] own thoughts. The secondary stage occurs when [W.B.] arrives home.... [W]hat would you expect during this secondary stage? Fear? Uncertainty? Confusion? What about [W.B.]? She's crying. When she gets there, she curls up in the fetal position. When people are hurt, when they are experiencing trauma, when they are trying to [disassociate] themselves, they curl up in the fetal position.... [W.B.'s friends] persuade her to go get an examination. Again, consistent with the secondary stage, she hasn't had any alone time to process what's just happened. She goes and gets an examination. And she doesn't want to ID the person that had done this to her.... The defense will ask you to believe that she's not telling the truth, that she's hiding something. Well, she is hiding something, but it's because she's in the secondary stage; she's not sure what to do at this point.

The prosecutor then explained the "final stage" a trauma victim experiences:

What will you expect during the final stage? Anger, a feeling of being violated, and a realization that this occurred to [her;] that [she was] sexually assaulted. What [did W.B.] do? She gave a full [statement] to [a detective] at the Aurora Police Department....

The prosecutor reinforced the above statements with a slide presentation that he portrayed as describing the three stages trauma victims endure and explaining how W.B.'s experiences and actions fit within these three stages. The first slide described the "Initial Stage" as "Shock," "Disbelief," and "Confusion," and listed a number of bullet points describing what W.B. experienced. Subsequent slides described the "Secondary Stage" as "Fear," "Uncertainty," and "Confusion," and listed more of W.B.'s behaviors. Another slide depicted the "Final Stage" as including "Anger," "Violated" [sic], and "Realization," noting more of W.B.'s behaviors.

Defendant contends the prosecutor was describing a variation of rape trauma syndrome. *See Farley v. People,* 746 P.2d 956, 958 (Colo.1987) (discussing rape trauma syndrome, and recognizing that "certain testimony could easily amount to rape trauma syndrome evidence despite a failure to label it as such"). We agree.

Since the supreme court permitted admission of expert testimony concerning rape trauma syndrome evidence in *People v. Hampton*, 746 P.2d 947, 951–52 (Colo.1987), *abrogated on other grounds by People v. Shreck*, 22 P.3d 68 (Colo.2001), such expert testimony has occasionally been admitted in Colorado sexual assault trials. *See, e.g., People v. Baenziger*, 97 P.3d 271, 275 (Colo.App. 2004). Although the court in *Farley* ruled that it was permissible for a counselor employed by a Victim Services Unit to give *lay* opinion testimony about rape victims' typical reactions, she had counseled approximately thirty rape victims and thus had substantial grounds, based on her extensive personal observations, to render such an opinion. 746 P.2d at 958.

The People assert that the prosecutor's argument was focused on W.B.'s demeanor, and did not amount to a discussion of rape trauma syndrome. However, the prosecutor did not limit his discussion to W.B.'s demeanor; rather, he described the "stages" trauma victims experience and then argued that W.B.'s behaviors fit within these stages. This argument was improper.

Contrary to the People's contention here, the prosecutor's closing argument was not wholly rooted in the evidence presented at trial. The prosecution presented no evidence as to any "stages" of trauma. The prosecutor's attempt to cast his argument in terms of common sense and common experience was unavailing, as his argument implicated the results of social science research, *see Hampton*, 746 P.2d at 949, and there is no reason to believe average jurors would be knowledgeable about the reactions and behaviors of rape victims.

By making such a detailed argument about the supposed "stages" experienced by trauma victims, the prosecutor implied that he had specialized knowledge and expertise in such matters, perhaps derived from his position as a deputy district attorney who might be experienced in dealing with such victims. *See Domingo–Gomez*, 125 P.3d at 1052 (prosecutor's statements, unrooted in trial evidence or reasonable inference therefrom, were improper expression of personal opinion; power and prestige inexorably linked to

district attorney's office could encourage jurors to convict on improper basis). This argument improperly encouraged jurors to rely on such supposed knowledge and expertise, rather than to limit their deliberation to the facts in evidence and the reasonable inferences therefrom. *See People v. Walters*, 148 P.3d 331, 336 (Colo.App.2006) (improper for prosecutor to argue information that was both outside the record and beyond jurors' personal observations and life experiences; prosecutor's comments injected his own knowledge and credibility into the case).

The prosecutor's argument effectively amounted to expert testimony, which improperly bolstered W.B.'s credibility. We conclude it was error for the trial court to permit such improper argument.

### C. The Comments Warrant Reversal

■■■■ In determining whether prosecutorial misconduct warrants reversal, we consider "the severity and frequency of the misconduct, any curative measures taken to alleviate the misconduct, and the likelihood that the misconduct constituted a material factor leading to defendant's conviction." *People v. Jones*, 832 P.2d 1036, 1040 (Colo. App.1991). We conclude the misconduct here was not harmless.

The evidence against defendant was not overwhelming. Other than defendant and W.B., no one observed the alleged assault. Defendant contended he did not sexually assault W.B. because the sex was consensual. The defense attacked W.B.'s credibility because she had previously had a consensual sexual relationship with defendant and she delayed her decision to report the incident to the police. There were several discrepancies between the information W.B. initially gave to police officers and her subsequent testimony. Additionally, there was conflicting testimony by medical experts as to whether W.B. exhibited evidence of physical trauma caused by sexual assault.

The prosecutor's argument improperly bolstered W.B.'s credibility, which was crucial to defendant's conviction. The remarks concerning trauma stages constituted a significant portion of the prosecutor's closing argu-

ment and were highly improper. The trial court took no curative measures to alleviate the misconduct.

◼ We are not persuaded by the People's argument that defendant's failure to request a curative instruction precludes him from arguing that he was irremediably prejudiced. *United States v. Young,* 470 U.S. 1, 13, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), cited by the People, does not so hold, and we see no need for such a request where, as here, defendant made multiple contemporaneous objections to the prosecutor's argument and slide show. Additionally, a mere curative instruction may not have remedied the prejudicial effect of the prosecutor's comments. *Cf. People v. Mersman,* 148 P.3d 199, 203 (Colo.App.2006) ("Generally, curative instructions issued after a prejudicial statement is made will remedy any harm caused by the statement.").

We conclude the prosecutor's conduct was highly improper and so severely affected the fairness of the trial that reversal is required. *See Walters,* 148 P.3d at 336–37.

### III. Remaining Issues

Because of our resolution of the prosecutorial misconduct issue, we need not address defendant's double jeopardy argument or the sentencing issues he raises.

The judgment and sentence are reversed and the case is remanded for a new trial.

Judge TAUBMAN and Judge MILLER concur.