2017 CO 6

**The PEOPLE of the State of Colorado, Petitioner,**

v.

**Ruben Rosendo RAMOS, Respondent.**

**Supreme Court Case No. 13SC105**

Supreme Court of Colorado.

February 6, 2017

889

Attorneys for Petitioner: Cynthia H. Coffman, Attorney General, Katharine J. Gillespie, Senior Assistant Attorney General, Denver, Colorado

Attorneys for Respondent: Douglas K. Wilson, Public Defender, Adam Mueller, Senior Deputy Public Defender, Denver, Colorado

CHIEF JUSTICE RICE delivered the Opinion of the Court.

¶1 This case, like our recently announced case Venalonzo v. People, 2017 CO 9, 388 P.3d 868, requires us to address the difference between lay and expert testimony.[1] Specifically, this case requires us to resolve one issue, whether an ordinary person would be able to differentiate reliably between blood cast-off (i.e., blood droplets from waving a hand around) and blood transfer (i.e., blood transferred by physical contact). Applying the test we announced in Venalonzo, we hold that an ordinary person would not be able to testify reliably about the difference between blood cast-off and blood transfer. Therefore,

---

1. We granted certiorari to review the following issue:

Whether the court of appeals erred in concluding that a police detective was improperly allowed to give lay opinion testimony concerning the blood evidence in this case, where the detective's limited testimony was not dependent upon his training and experience and was the type of information that is rooted in experiences common among ordinary citizens[.]

we affirm the court of appeals' holding that the trial court abused its discretion by not qualifying the police detective's blood testimony as expert testimony.

## I. Facts and Procedural History

¶2 On November 13, 2006, Respondent Ruben Rosendo Ramos was riding in the front passenger seat of a car driven by his girlfriend. His girlfriend's three children were seated in the backseat along with R.L., his girlfriend's friend. R.L. testified that Ramos and his girlfriend began to argue, and that Ramos turned around and said to R.L., "I don't know you. I don't like d[y]ke bitches like you. I'll beat your ass." R.L. then testified that Ramos punched her several times in the face and lower neck. When this occurred, Ramos's hand was already bandaged and bleeding from an unrelated injury. Blood from his bandaged hand ended up on R.L.'s jacket and baseball cap. Ramos's theory of defense was that he had not struck R.L. and the blood stains were from waving his hands around.

¶3 The People charged Ramos with (1) committing a bias-motivated crime in violation of section 18–9–121(2)(a), C.R.S. (2006), and (2) assault in the third degree in violation of section 18–3–204, C.R.S. (2006). At trial, there were two main pieces of evidence against Ramos. The first piece of evidence was R.L.'s testimony. Second, and the crux of this appeal, was a police detective's testimony that the trial court admitted as lay testimony. The detective viewed photographic evidence of some of the blood on R.L. and opined that it was from transfer (i.e., physical contact) and not the product of cast-off (i.e., Ramos's waving his hand around).

¶4 The jury convicted Ramos of both counts. He appealed, and the court of appeals reversed in a two to one decision, People v. Ramos, 2012 COA 191, ¶ 36, 272 P.3d 1179, holding that the trial court abused its discretion by allowing the detective to testify as a lay witness on the subject of blood transfer. The People timely appealed. We granted certiorari and now affirm the court of appeals.

## II. Standard of Review

¶5 We review a trial court's evidentiary decisions for an abuse of discretion. People v. Stewart, 55 P.3d 107, 122 (Colo. 2002). A trial court abuses its discretion only when its ruling is manifestly arbitrary, unreasonable, or unfair. Id.

## III. Analysis

¶6 Under Colorado Rule of Evidence 701, testimony is proper as lay testimony and not expert testimony if the testimony is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Under Colorado Rule of Evidence 702, a party may call an expert witness if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue...."

¶7 "The proper inquiry is not whether a witness draws on her personal experiences to inform her testimony; all witnesses rely on their personal experience when testifying." Venalonzo, ¶ 22. "Rather, it is the nature of the experiences that could form the opinion's basis that determines whether the testimony is lay or expert opinion." Id. "In assessing whether an opinion is one which could be reached by any ordinary person, courts consider whether ordinary citizens can be expected to know certain information or to have had certain experiences." People v. Rincon, 140 P.3d 976, 983 (Colo. App. 2005) (citing United States v. McDonald, 933 F.2d 1519, 1522 (10th Cir. 1991)) (internal quotation marks omitted). "Expert testimony, by contrast, is that which goes beyond the realm of common experience and requires experience, skills, or knowledge that the ordinary person would not have." Venalonzo, ¶ 22.

¶8 Ultimately, to differentiate between lay and expert testimony, Colorado courts use the following test from Venalonzo:

[I]n determining whether testimony is lay testimony under Colorado Rule of Evidence ("CRE") 701 or expert testimony under CRE 702, the trial court must look

to the basis for the opinion. If the witness provides testimony that could be expected to be based on an ordinary person's experiences or knowledge, then the witness is offering lay testimony. If, on the other hand, the witness provides testimony that could not be offered without specialized experiences, knowledge, or training, then the witness is offering expert testimony.

¶ 2.

¶9 Applying the Venalonzo test to this case, we hold that an ordinary citizen would not be expected to have the experience, skills, or knowledge to differentiate reliably between blood cast-off and blood transfer. The police detective opined that the blood on the victim's hat was the result of physical contact and that the bloodied area "could be" roughly the area of a fist. In making this determination, he relied on his nineteen years of experience as a police officer, nine years of experience as a detective, and his work on thousands of cases involving blood. His extensive experience in identifying blood patterns, by itself, did not transform his testimony from lay to expert. But an ordinary citizen, without nineteen years of experience investigating thousands of cases involving blood, would not have been able to provide the same conclusions. And the People in this case capitalized on the detective's specialized experience and knowledge by asking at least six questions invoking the detective's "training and experience."[2]

¶10 Further, the detective's testimony used technical terms—e.g., "spatter" versus "cast-off" and the use of "buccal swabs" for DNA testing. His testimony helped demonstrate that forensics and the analysis of blood transfer—specifically the difference between cast-off and transfer—are technical areas not within the realm of an ordinary person's experience or knowledge. The People used the detective's testimony and his specialized knowledge to "assist the trier of fact to understand the evidence or determine a fact in issue." See CRE 702. If ordinary people had a well-developed understanding of blood transfer, then his testimony would have been unnecessary—the jury could have correctly

interpreted the photographic evidence of blood on R.L. by itself.

¶11 Therefore, the court of appeals was correct when it held that the trial court abused its discretion by not qualifying the police detective as an expert when he testified on the subject of blood transfer.

## IV. Conclusion

¶12 We affirm the court of appeals and hold that the trial court abused its discretion when it admitted the police detective's blood pattern testimony without qualifying him as an expert.

JUSTICE COATS concurs in the judgment, and JUSTICE EID joins in the concurrence in the judgment.

JUSTICE BOATRIGHT dissents.

JUSTICE COATS, concurring in the judgment.

¶13 For the reasons I have offered in my alternate opinion in Venalonzo v. People, 2017 CO 9, 388 P.3d 868, I disagree with the majority's understanding of the distinction between lay and expert testimony; however, because the officer relied, according to his own testimony, on his years of training and experience in assessing the nature and causes of the blood patterns as to which he testified in this case, I too would find it error to admit his testimony without subjecting him to qualification as an expert witness.

¶14 Because I would affirm the judgment of the court of appeals for different reasons, I concur in the judgment of the court.

I am authorized to state that JUSTICE EID joins in this concurrence in the judgment.

JUSTICE BOATRIGHT, dissenting.

¶15 An ordinary person can describe a stain, even a blood stain. Any person who has painted knows the difference between a stain that comes from touching wet paint and a stain that comes from paint that sprayed off a brush or roller. Hence, I disagree with the

2. For instance, the prosecutor asked, "Now, in your training and experience, what does blood that comes from a transfer typically look like?" (emphasis added).

majority's determination that "an ordinary citizen, without nineteen years of experience investigating thousands of cases involving blood," could not distinguish transfer from spatter. Maj. op. ¶ 9. Furthermore, the majority's conclusion that the detective gave an expert opinion in this circumstance puts trial court judges in an untenable position because the alleged opinion comprised separate statements offered over the course of direct, cross, and redirect examination. Expecting a trial court to cobble together brief testimonial statements given at different times to determine whether a witness offered a single expert opinion is unrealistic. Therefore, I respectfully dissent.

¶16 To begin, I agree that the majority applies the correct test as we articulated it in Venalonzo v. People, 2017 CO 9, 388 P.3d 868. "[I]n determining whether testimony is lay testimony under CRE 701 or expert testimony under CRE 702, the trial court must look to the basis for the opinion." Venalonzo, ¶ 23. "[T]estimony that could be expected to be based on an ordinary person's experiences or knowledge" is lay testimony admissible under CRE 701. Id. Conversely, "testimony that could not be offered without specialized experiences, knowledge, or training" is expert testimony admissible under CRE 702. Id. While the majority applies the proper test, I disagree with its conclusion.

¶17 To accurately determine whether the testimony in this case is lay or expert, it is important to look at the witness's specific testimony. The majority indicates that "the police detective opined that the blood on the victim's hat was the result of physical contact and that the bloodied area 'could be' roughly the area of a fist." Maj. op. ¶ 9. While he did testify to those observations, he did not do so in a single statement. Rather, the detective gave separate statements sharing discrete observations at different points in his testimony. On direct examination, the detective defined the terms transfer and spatter and said that the hat stain looked like transfer and the coat stains, spatter:

> [Prosecutor:] Detective ... does that blood on the hat look like it was cast off or transfer?
>
> [Detective:] Transfer.

> [Prosecutor:] And what does that mean in your training or experience?
>
> [Detective:] Again, it's something that has blood on it and is touching, in this Exhibit number 8, the hat, and leaving what appears to be blood from one item and leaving that blood on the hat.
>
> [Prosecutor:] And with respect to the other exhibit that I handed you, if you could identify that by the number that deals with the coat.
>
> [Detective:] It's exhibit number six.
>
> [Prosecutor:] Detective, on that in your training and experience does that look like it's blood from transfer or cast off?
>
> [Detective:] It would be a spatter or cast off droplet type of blood.
>
> [Prosecutor:] And what's that typically consistent with in your training and experience?
>
> [Detective:] It could be from anything. Like I said, a hand waiving [sic] and spraying the blood. It could be something bloody with a sudden stop. The blood will, of course, continue and land somewhere.

On cross-examination, defense counsel first raised the issue of the size of the hat stain by asking about it in relation to the size of a dollar bill, and the detective indicated it was a little smaller than that. Then, on redirect, the prosecutor asked about the size of the hat stain in relation to a fist:

> [Prosecutor:] Detective ... observing the area that was discussed by counsel on the hat, is that roughly the area of a fist perhaps?
>
> [Detective:] It could be.

Following this exchange, defense counsel objected. The court overruled the objection, reasoning that the defense had opened the door to the testimony on cross-examination.

¶18 In my view, the ordinary person could make these same observations. The detective described the stains and later said the hat stain could be the size of a fist. Any person who has ever painted a wall has the experience necessary to describe these types of stains. Simply put, an ordinary person knows the difference between a stain that comes from touching a wall that has wet paint and a

stain that comes from spray off of a brush or roller. Those stains are distinct from one another—one is a smudge, and the other is droplets. In fact, in this very trial an ordinary person identified the coat stain as spatter after viewing the photographs of the stains. Defense counsel on cross-examination of the victim, a lay person, asked whether the drops of blood on the sleeves of her jacket came from "splatter [sic] ... where [the defendant's] hand was bleeding," and the victim responded that they did.[1] The fact that the victim, without any training or specialized experience in blood pattern analysis, was able to understand the question and identify that the stain on her coat was the result of cast-off droplets rather than a transfer from direct contact with the source of the blood, demonstrates that no specialized training or experience is necessary to accurately describe a stain in this manner. Further, the fact that defense counsel even asked the victim the question indicates that she expected the lay witness to be able to answer it.

¶19 To support its conclusion that the testimony requires specialized training or experience, the majority points to the detective's use of jargon in his testimony. The majority reasons that because the detective's testimony used "technical terms," it was expert testimony because an ordinary person would not be expected to know the meanings of or differences among the terms used. Maj. op. ¶ 10. For the sake of argument, I agree that the ordinary person could not be expected to know the meanings of the terms "buccal swab," "cast-off," or "spatter" within the context of forensic analysis. But as we held in Venalonzo, the use of technical terminology is not dispositive. Venalonzo, ¶ 27 ("As for the distinction between leading and non-leading questions, the terms themselves may not be familiar to a lay person, but the concepts certainly are."). Rather, it is the substance of the testimony that matters, and whether an ordinary person could be expected to have experiences, knowledge, or training sufficient to form the basis for it. Jargon aside, the ordinary person could be expected to have experiences or knowledge sufficient to form the basis for the transfer-versus-spatter testimony and the testimony regarding the size of a stain in relation to a dollar bill or a fist.[2]

¶20 To be sure, the detective's description of his years of experience conducting thousands of investigations made it more difficult for the trial court to determine whether his testimony violated CRE 701, but defense counsel was free to make a relevance objection to testimony that exceeded the necessary foundation. And while framing questions in terms of the witness's "training and experience" makes it more likely that the testimony is expert testimony, the essential inquiry remains whether the testimony given could be expected to be based on an ordinary person's experiences or knowledge. Venalonzo, ¶ 23.

¶21 Equally troubling, the majority cobbles together the detective's responses to a series of questions asked at different times and characterizes the compilation of his answers as a single expert opinion. In my view, this approach creates an unrealistic expectation for trial court judges. Trial courts cannot analyze a transcript to determine whether statements given during various parts of testimony constitute an expert opinion in their combined effect. Because testimony like this often proceeds very quickly, it would not be feasible for the trial court to anticipate and ultimately conclude that a compilation of disjointed testimonial statements qualified as an expert opinion under CRE 702. Under these circumstances, I would conclude that the trial court did not abuse its discretion when it admitted the detective's testimony that one stain was caused by transfer, the second stain was caused by spatter, and the size of the transfer stain "could be" the size of a fist.

¶22 The defendant apparently recognized that the detective's responses as he offered them could constitute lay testimony, because in his briefing he overstated the nature of the detective's testimony. He repeatedly asserted

---

1. The fact that defense counsel used the word "splatter" instead of the technical term "spatter" is irrelevant. See infra ¶ 5.

2. I fail to see how the portion of the detective's testimony about obtaining a DNA sample (i.e., buccal swab) from Ramos is relevant to the narrow issue of blood stain descriptions we address here.

that the detective "offer[ed] his opinion that Mr. Ramos's blood transferred to [the victim's] hat as a result of a punch to the head." If the detective had offered such an opinion, then I would agree that he had offered expert testimony. A lay person would not have the knowledge to opine about the specific cause of a stain. But that is not what the detective said. The detective testified only that the blood stains in question were spatter or transfer and then described the size of the stain on the victim's hat.

¶23 For the foregoing reasons, I would conclude that the trial court did not abuse its discretion in allowing the detective's testimony as lay opinion. I believe the majority erred in its application of the Venalonzo test to the facts of this case. Hence, I respectfully dissent.