1
 2024 CO 69 The People of the State of Colorado, Petitioner v. Pete Paul Martinez, Respondent No. 23SC197
Supreme Court of Colorado, En Banc
November 4, 2024

 Certiorari to the Colorado Court of Appeals Court of Appeals
Case No.19CA175

 Attorneys for Petitioner: Philip J. Weiser, Attorney General
William G. Kozeliski, Senior Assistant Attorney General
 Denver, Colorado

 Attorneys for Respondent: Megan A. Ring, Public Defender M.
 Shelby Deeney, Deputy Public Defender Denver, Colorado

 Justice Gabriel delivered the Opinion of the Court, in which
 Chief Justice Márquez, Justice Boatright, Justice
 Hood, Justice Hart, Justice Samour, and Justice Berken Kotter
 joined.

 OPINION

 GABRIEL, JUSTICE

 ¶1
We granted certiorari to determine whether (1) testimony that
 otherwise meets the requirements of CRE 702 and People v.
 Shreck, 22 P.3d 68 (Colo. 2001), is rendered
 inadmissible because the witness was not formally offered and
 accepted as an expert during their testimony; and (2) it is
 plain error to admit expert testimony without a formal offer
 and acceptance when the record demonstrates that the
 requirements of CRE 702 and Shreck have been met.

 ¶2
We now conclude that CRE 702 and our case law neither require
 nor prohibit a formal offer and acceptance of an expert.
Accordingly, the lack of a formal tender and acceptance of
 the expert does not alone render expert testimony
 inadmissible, and such testimony is admissible if it
 otherwise complies with the requirements of CRE 702 and
Shreck.

 ¶3
 Applying these principles here, we further conclude that the
 trial court did not err, much less plainly err, in admitting
 Dr. Charles Harrison's testimony in this case. We
 therefore reverse the judgment of the division below and
 remand this case to allow the division to address the other
 issues that Pete Paul Martinez raised and that the division,
 in light of its determination, did not reach.

 I.
Facts and Procedural History

 ¶4
 Martinez was charged with first degree murder, and he entered
 a plea of not guilty by reason of insanity
 ("NGRI"). As required by law, the trial court
 ordered

 a sanity evaluation, which was conducted by Dr. Harrison, a
 staff psychologist at the Colorado Mental Health Institute in
 Pueblo. Dr. Harrison reviewed discovery, records from the
 jail, and Martinez's mental health records, and he
 interviewed Martinez for three hours. He then produced a
 report in which he opined that Martinez was legally sane at
 the time of the alleged offense. The Colorado Mental Health
 Institute's superintendent sent this report to the court
 in November 2017, over a year before trial, and the report
 was apparently provided to the parties at or about that time.
Martinez later hired his own expert, Dr. Wells, to perform a
 second sanity evaluation.

 ¶5
 In advance of trial, the People filed a supplemental witness
 list, noting which of its witnesses were experts and in what
 field. Notably, this list did not include Dr. Harrison.
Thereafter, at the final pretrial conference, the People
 explained that they had not endorsed Dr. Harrison as a
 witness because they planned to call him only on rebuttal,
 and only if Martinez chose to testify and raised something
 that the People felt necessitated a response.

 ¶6
 Approximately one week later, Martinez filed an Endorsement
 of Defenses and Witnesses. In this document, he indicated
 that he might rely on general denial and NGRI defenses at
 trial.

 ¶7
 Trial subsequently commenced, and on the first day of trial,
 the People argued that Martinez had failed to disclose his
 insanity defense in a timely fashion

 and that the People had thought that Martinez had abandoned
 that defense. Now that he had endorsed the defense for trial,
 however, the People requested that the court order Martinez
 to turn over anything that his sanity expert, Dr. Wells, had
 relied on or produced, including any notes or
 "summations" that she had prepared. Notably, in the
 ensuing discussion, the court referred to Dr. Harrison and
 Dr. Wells as the "two experts." The court
 ultimately ordered Martinez's counsel to obtain from Dr.
 Wells all documents in her file and to produce them to the
 court for in camera review. The court stated that after
 completing its review, it would determine which documents, if
 any, Martinez would need to produce to the People and also
 whether Dr. Wells would be permitted to testify.

 ¶8
 The next day, the People filed a further supplemental witness
 list, which included only Dr. Harrison. As they had done in
 connection with the experts disclosed in their prior
 supplemental witness list, the People also filed Dr.
 Harrison's curriculum vitae. Unlike what they had done
 with their prior supplemental witness list, however, and for
 reasons that the record does not disclose, the People did not
 specifically note that Dr. Harrison was an expert witness,
 nor did they identify a field of expertise for him.

 ¶9
The case proceeded, and the People ultimately called several
 expert witnesses. For each of these witnesses, the People
 laid a foundation regarding the witness's qualifications
 and expertise and then expressly tendered the witness as

 an expert in a given field pursuant to CRE 702. By way of
 example, the People tendered one of their expert witnesses,
 Dr. Caruso, and the trial court admitted him as an expert, as
 follows:

[Prosecutor]: Your Honor, at this time, pursuant to Colorado
 Rule of Evidence 702, we would tender Dr. Caruso as an expert
 in forensic pathology.

The Court: Any objection?

[Defense Counsel]: No objection.

The Court: He may offer opinions consistent with that rule.
Ladies and gentlemen, the reference is to Rule 702, that is a
 rule of evidence that governs expert opinion testimony. He
 may offer opinions consistent with the rule.

 ¶10
 In contrast to the foregoing procedure, when the People
 called Dr. Harrison, although they reviewed his
 qualifications and expertise in psychology at length, they
 did not expressly tender him as an expert. Nor did the court
 expressly accept him as an expert or rule that he was
 entitled to offer opinions consistent with CRE 702. The
 People nonetheless proceeded as if Dr. Harrison's
 qualifications had been accepted, ultimately asking for his
 opinion as to Martinez's mental state at the time of the
 offense at issue. Dr. Harrison reiterated his view that
 Martinez was sane at the time he committed the offense.

 ¶11
 Notably, at various points throughout the trial proceedings,
 the People, the court, and defense counsel all referred to
 Dr. Harrison as an "expert." In one exchange,
 defense counsel even referred to Dr. Harrison as "the
 expert who's been

 endorsed by the prosecution for purposes of giving expert
 opinion as to Mr. Martinez's mental state." In
 addition, on four occasions, the People asked Dr. Harrison
 for his "expert opinion," and Dr. Harrison twice
 expressly labeled his testimony as reflecting his
 "expert opinion" on a matter.

 ¶12
 Although Martinez objected to certain questions as beyond the
 scope of Dr. Harrison's expert opinion, what he had been
 endorsed to testify to, what his report discussed, or
 allowable opinion, he did not object to Dr. Harrison's
 opining on Martinez's sanity, notwithstanding the lack of
 a formal offer and acceptance of Dr. Harrison as an expert.
Similarly, although the People referred to Dr. Harrison as an
 "expert" multiple times in their closing argument,
 Martinez never objected to these characterizations. And
 Martinez chose not to call his own sanity expert, Dr. Wells,
 as a witness, thus undermining any suggestion that errors in
 disclosure regarding Dr. Harrison prevented Martinez from
 calling his own expert.

 ¶13
 A jury ultimately convicted Martinez as charged, rejecting
 his NGRI defense. Martinez appealed, contending, as pertinent
 here, that the trial court had erred by admitting Dr.
 Harrison's testimony without requiring that he be
 formally offered and accepted as an expert witness.
People v. Martinez, No. 19CA175, ¶ 8 (Feb. 16,
 2023). A split division of the court of appeals agreed and
 reversed. Id.

 ¶14
 The majority determined that "because Dr. Harrison was
 neither offered nor admitted as an expert witness, he was
 testifying only as a lay witness," and

 because his testimony exceeded the scope of proper lay
 testimony under CRE 701, his testimony was erroneously
 admitted. Id. at ¶¶ 33, 40. The majority
 purported to find support for this ruling in several cases
 from this court discussing the requirements of expert witness
 testimony. Id. at ¶¶ 34-44. The majority
 further concluded that reversal was required "because
 Dr. Harrison's testimony was central to proving that
 Martinez was sane at the time of the charged crime."
Id. at ¶ 8. In light of its ruling, the
 majority did not address the remaining issues that Martinez
 had raised on appeal. Id.

 ¶15
Judge Tow dissented. In his view, Martinez had waived any
 objection to Dr. Harrison's testimony by not challenging
 the propriety of Dr. Harrison's offering expert opinions
 despite knowing that he had not been formally tendered as an
 expert. Id. at ¶¶ 73-79 (Tow, J.,
 dissenting). Alternatively, Judge Tow concluded that any
 error in admitting Dr. Harrison's testimony was not plain
 and therefore reversal was unwarranted. Id. at
 ¶ 80. Lastly, Judge Tow noted that all of the cases on
 which the majority relied to support its view that a formal
 tender and acceptance was a prerequisite to the witness's
 testifying as an expert were distinguishable because they
 involved scenarios in which a witness was called as a fact
 witness but then gave testimony that arguably strayed into
 expert testimony. Id. at ¶¶ 62-68. In
 contrast, this case involved an expert witness offering
 expert testimony who simply had not been expressly tendered
 as an expert. Id. at ¶ 69.

Moreover, Judge Tow observed that Dr. Harrison's
 involvement in this case began when the court
 appointed him as an expert, and his role never changed.
Id.

 ¶16
The People petitioned this court for certiorari review, and
 we granted their petition.

 II.
Analysis

 ¶17
We begin by setting forth the applicable standard of review
 and the basic principles concerning expert witness testimony
 under the Colorado Rules of Evidence and our case law. We
 then address the question of whether CRE 702 and our case law
 require expert witnesses to be formally offered and accepted
 as experts as a condition of admissibility. We conclude that
 CRE 702 and our case law neither require nor prohibit such an
 offer and acceptance for expert testimony to be admissible
 and therefore, the trial court did not err, much less plainly
 err, in admitting Dr. Harrison's testimony.

 A.
Standard of Review and Principles of Expert
 Testimony

 ¶18
 Whether CRE 702 requires a formal offer and acceptance of an
 expert witness is a question of law that we review de novo.
Gonzales v. People, 2020 CO 71, ¶ 26, 471 P.3d
 1059, 1063 ("The interpretation of a rule of evidence is
 a question of law, which we review de novo.").

 ¶19
 CRE 702, which governs expert testimony, provides, "If
 scientific, technical, or other specialized knowledge will
 assist the trier of fact to understand the

 evidence or to determine a fact in issue, a witness qualified
 as an expert by knowledge, skill, experience, training, or
 education, may testify thereto in the form of an opinion or
 otherwise."

 ¶20
 In Shreck, 22 P.3d at 77-79, we announced what we
 later described as a four-part test to guide a trial
 court's exercise of discretion in considering the
 admissibility of expert testimony under CRE 702: "(1)
 the scientific principles underlying the testimony must be
 reasonably reliable; (2) the expert must be qualified to
 offer the testimony; (3) the testimony must be helpful to the
 jury; and (4) the evidence must satisfy CRE 403."
People v. Cooper, 2021 CO 69, ¶ 1, 496 P.3d
 430, 432 (citing Shreck, 22 P.3d at 77-79). In
 addition, expert testimony in criminal cases must comply with
 the discovery and disclosure requirements set forth in Crim.
 P. 16.

 ¶21
 CRE 701, in turn, governs lay opinion testimony. That rule
 provides:

If the witness is not testifying as an expert, the
 witness' testimony in the form of opinions or inferences
 is limited to those opinions or inferences which are (a)
 rationally based on the perception of the witness, (b)
 helpful to a clear understanding of the witness'
 testimony or the determination of a fact in issue, and (c)
 not based on scientific, technical, or other specialized
 knowledge within the scope of Rule 702.

Id.

 ¶22
 In Venalonzo v. People, 2017 CO 9, ¶ 16, 388
 P.3d 868, 873, we provided guidance regarding how courts are
 to distinguish lay from expert testimony:

[I]n determining whether testimony is lay testimony under CRE
 701 or expert testimony under CRE 702, the trial court must
 look to the basis for the opinion. If the witness provides
 testimony that could be expected to be based on an ordinary
 person's experiences or knowledge, then the witness is
 offering lay testimony. If, on the other hand, the witness
 provides testimony that could not be offered without
 specialized experiences, knowledge, or training, then the
 witness is offering expert testimony.

 B.
Offer and Acceptance of an Expert

 ¶23
The People contend that the majority below erred in
 concluding that CRE 702 and our case law require, as a
 condition of the admissibility of expert testimony, that the
 witness be formally tendered by a party and admitted by the
 court as an expert. We agree.

 ¶24
 As an initial matter, we note, contrary to the majority's
 opinion below, Martinez, ¶¶ 33, 40, that
 under Venalonzo, ¶ 16, 388 P.3d at 873, Dr.
 Harrison was testifying as an expert witness because, as the
 trial court and all parties below appear to have agreed, his
 testimony was indisputably based on "specialized
 experiences, knowledge, or training." The character of
 Dr. Harrison's testimony did not change merely because
 the People did not formally tender and the court did not
 admit him as an expert.

 ¶25
 The question thus becomes whether Dr. Harrison's
 testimony was rendered inadmissible by the absence of a
 formal offer and acceptance of him as an expert. We conclude
 that it was not.

 ¶26
 As noted above, CRE 702's plain text requires that a
 witness be qualified as an expert based on knowledge, skill,
 training, or education and that the witness's testimony
 be helpful to the trier of fact. Our case law has further
 determined that CRE 702 requires that the scientific
 principles underlying the expert's testimony be
 reasonably reliable and that the evidence satisfy the
 requirements of CRE 403. See Cooper, ¶ 1, 496
 P.3d at 432; Shreck, 22 P.3d at 77-79. We perceive
 nothing in CRE 702's express language or in our case law
 that requires that an expert witness be formally offered and
 accepted as a condition of admissibility, and we decline to
 adopt such a requirement now.

 ¶27
We are not persuaded otherwise by Martinez's contention
 that the word "qualified" in CRE 702 implies an
 offer and acceptance requirement because, in his view, it is
 used as a verb requiring action to qualify the witness. To
 the contrary, CRE 702 uses the word "qualified" as
 an adjective modifying the word "witness."
Specifically, under CRE 702's plain language, witnesses
 are "qualified" when they have certain
 qualifications, namely, knowledge, skill, experience,
 training, or education in the field in which they will offer
 opinion testimony. See Shreck, 22 P.3d at 78 (noting
 that CRE 702 requires a determination as to, among other
 things, "the qualifications of the witness");
see also Melville v. Southward, 791 P.2d 383, 387
(Colo. 1990) (stating that the court must determine, among
 other things, "whether the witness is properly qualified
 by knowledge, skill, experience,

 training, or education, to offer an opinion on the issue in
 question"). Thus, the word "qualified" in CRE
 702 does not refer to an action taken by a party or the
 court. Rather, it refers to a quality of the witness. In
 other words, a witness is not qualified by a court
 or a party, but rather a witness is qualified because
 of their "knowledge, skill, experience, training,
 or education." CRE 702.

 ¶28
We likewise are unpersuaded by Martinez's citation to
 cases from this court that he interprets as requiring that an
 expert witness be formally offered and accepted as a
 condition of admissibility. Contrary to Martinez's
 assertions, none of the cases on which he relies addressed
 the issue now before us, and, in any event, the cases are
 distinguishable on their facts.

 ¶29
 For example, in People v. Stewart, 55 P.3d 107, 124
(Colo. 2002), we said that a witness "must be properly
 qualified as an expert before offering testimony that amounts
 to expert testimony." Similarly, in Venalonzo,
 ¶ 6, 388 P.3d at 871, we noted that the trial court had
 "declined to require the People to qualify [a forensic]
 interviewer as an expert." And in People v.
 Ramos, 2017 CO 6, ¶ 1, 388 P.3d 888, 890, we
 affirmed the court of appeals division's holding that
 "the trial court abused its discretion by not qualifying
 the police detective's blood testimony as expert
 testimony."

 ¶30
We, however, did not make these statements in the context of
 addressing whether the formal offer and acceptance of an
 expert was a condition of admissibility. Indeed, none of
 these cases presented that issue.

 ¶31
 In any event, the cases on which Martinez relies are
 distinguishable from the present case. Specifically,
 Stewart, Venalonzo, and Ramos all
 involved scenarios in which what is essentially expert
 testimony was improperly admitted in the guise of lay
 opinion. See Ramos, ¶ 9, 388 P.3d 891;
Venalonzo, ¶ 30, 388 P.3d at 877;
Stewart, 55 P.3d at 123. In each of these cases, a
 witness was characterized as a fact or lay witness by the
 prosecution and the trial court, but then the witness offered
 what was ultimately determined to be expert testimony.
See Ramos, ¶¶ 3, 9-11, 388 P.3d at 890-91;
Venalonzo, ¶¶ 5-7, 26-31, 388 P.3d at
 871-72, 875-77; Stewart, 55 P.3d at 122-24.
Moreover, because the witnesses were proffered as fact
 witnesses, the People in these cases did not make any of the
 pretrial disclosures required of expert testimony, thereby
 depriving the defendants of, among other things, an
 opportunity to obtain their own expert witnesses. See
 Venalonzo, ¶ 50, 388 P.3d at 881 (noting that, if
 the defendant had the benefit of pretrial disclosure of the
 forensic interviewer's expert testimony and the bases for
 her opinions, then he would have had an opportunity to
 evaluate her testimony in advance of trial or to obtain his
 own expert witness); Stewart, 55 P.3d at 123
(observing that admitting expert testimony in the guise of
 lay testimony subverts the disclosure and

 discovery requirements of the applicable rules, as well as
 the reliability requirements for expert testimony).

 ¶32
 Our concern in these cases regarding the absence of the
 required expert disclosures and the denial of the other
 procedural protections afforded by the applicable rules of
 criminal procedure is not an issue in this case. Here, unlike
 in the above-described cases, the People did not attempt to
 evade expert witness disclosure requirements, nor did they
 call an expert witness in the guise of a lay witness. Cf.
Stewart, 55 P.3d at 123 n.10. To the contrary, the trial
 court and the parties at all times treated Dr. Harrison as an
 expert, and the People substantially complied with Crim. P.
 16's disclosure requirements. Indeed, Martinez appears to
 have received Dr. Harrison's expert report over a year
 before trial, and he was able to use that report in framing
 objections to the scope of Dr. Harrison's testimony. And
 Martinez had every opportunity to retain his own expert,
 which he did, although he ultimately declined to call her at
 trial.

 ¶33
 For similar reasons, we are unpersuaded by Martinez's
 reliance on language in Farley v. People, 746 P.2d
 956 (Colo. 1987), which he also characterizes as
 demonstrating that the formal offer and acceptance of an
 expert are required. In Farley, 746 P.2d at 958, the
 trial court stated that it had accepted a witness as an
 expert, but we observed that the record did not support the
 court's recollection. It is in this context that we
 pointed out that the witness "was neither offered nor

 accepted as an expert." Id. In other words, we
 were simply responding, as a factual matter, to what the
 trial court had misremembered. We did not address or opine in
 that case on the necessity of a formal offer and acceptance
 of an expert witness.

 ¶34
 Finally, we note that, in supporting its conclusion that a
 formal offer and acceptance are required as a condition of
 the admissibility of expert testimony, the majority below
 relied on our decision in Cooper, ¶ 1, 496 P.3d
 at 431-32. Martinez, ¶¶ 43, 47. That case,
 too, is inapposite. In Cooper, ¶ 1, 496 P.3d at
 431-32, we began by noting the general principle that the
 trial court must act as a gatekeeper to ensure that expert
 testimony is not admitted unless it is both reliable and
 relevant. Nothing in Cooper, however, suggested that
 a party must formally offer and the court must formally
 accept a witness as an expert before the witness may testify.
In discussing the trial courts' gatekeeper function, we
 were simply reiterating the settled principle that trial
 courts are responsible for ensuring that expert testimony
 satisfies the requirements of CRE 702 and Shreck.
See Cooper, ¶ 1, 496 P.3d at 431-32.

 ¶35
 For these reasons, we conclude that a party calling an expert
 witness need not formally offer, and the trial court need not
 formally accept, the witness as an expert as a condition of
 the admissibility of the expert's testimony. Accordingly,
 we conclude that the majority below erred in imposing such a
 requirement.

 ¶36
 In so concluding, we hasten to add that a formal offer and
 acceptance of an expert are not prohibited, either. Indeed,
 it is often good practice for a party to tender an expert in
 a particular field and for the trial court to make findings,
 whether before or during trial, as to that expert's
 qualifications and the proper scope of the expert's
 testimony. Such findings can clarify for the parties and
 perhaps the jurors the proper limits of the expert's
 testimony. Nonetheless, when, as here, no party objects to
 the admissibility of the proffered expert's testimony,
 the lack of findings on the record will not necessarily
 render the expert testimony inadmissible. See Ruibal v.
 People, 2018 CO 93, ¶ 13, 432 P.3d 590, 593 (citing
 prior case law for the proposition that "where a
 proper challenge has been raised, a trial court 'is
 required to issue specific findings' as to relevance and
 reliability under CRE 702") (emphasis added) (quoting
People v. Rector, 248 P.3d 1196, 1200 (Colo. 2011)).

 ¶37
 In reaching our conclusion in this case, we recognize that
 for many trial judges and lawyers, the practice of having a
 party formally tender and the court formally accept an expert
 has become routine, and we do not intend to suggest that this
 procedure is categorically improper. We further recognize,
 however, that in a given case, opposing counsel, as a matter
 of sound trial strategy, might not want the trial court to
 endorse the witness's expertise before the jury. And we
 fully understand why many trial judges prefer not to do so
 (hence, rather than

 informing the jury that the court will accept the witness as
 an expert in a given field, many trial judges prefer to
 announce that the court will allow the witness to offer
 opinion testimony under CRE 702, the rule governing expert
 testimony, as the trial court did here).

 ¶38
We perceive no reason to dictate a procedure that trial
 judges and lawyers must follow in all circumstances. It
 suffices for us to say that a party proffering expert
 testimony is obliged to comply with the procedural rules
 governing such testimony and to lay a proper foundation for
 that testimony. The trial court, in turn, is responsible for
 ensuring that admitted expert testimony complies with the
 requirements of CRE 702 and Shreck and that the
 proffering party adhered to the applicable procedural rules,
 so as not to prejudice the opposing party. Whether errors in
 any of these regards require reversal will depend on the
 specific circumstances of a given case.

 III.
Conclusion

 ¶39
 For these reasons, we conclude that CRE 702 and our case law
 do not require that a party formally offer and that a court
 formally accept a witness as an expert as a condition of the
 admissibility of proffered expert testimony. To the contrary,
 when expert testimony meets the requirements of CRE 702 and
Shreck, the lack of a formal offer and acceptance of
 the expert does not necessarily render the expert's
 testimony inadmissible.

 ¶40
 Applying these principles here, we conclude that the trial
 court did not err, much less plainly err, in admitting Dr.
 Harrison's expert testimony despite the fact that the
 People did not formally offer and the trial court did not
 formally accept him as an expert witness. We therefore
 reverse the judgment of the division below and remand this
 case to allow the division to address the issues that
 Martinez raised below and that the division, in light of its
 determination, did not reach.